UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
LEE BLACKMAN,

              Plaintiff,

        -against-

JPMORGAN CHASE, N.A., JAMIE
DIMON, GORDON SMITH,
MCGLINCHEY STAFFORD, PLLC,
DANA M. CARRERA, DENNIS A.
AMORE, and JOHN DOE,

              Defendants.
-----------------------------------------------------x

**MEMORANDUM AND ORDER**
20-CV-5539 (RPK) (LB)

RACHEL P. KOVNER, United States District Judge:

Alleging various claims arising from one or several Chase credit card accounts, *pro se* plaintiff Lee Blackman sues JPMorgan Chase Bank, N.A. ("Chase"), its law firm, and several individuals. All appearing defendants have filed a motion to dismiss. For the reasons that follow, the motion is granted in full.

## BACKGROUND

The following facts come from the amended complaint, incorporated documents, documents integral to the complaint, and documents amenable to judicial notice. Because plaintiff proceeds *pro se*, the Court considers not only the facts in his amended complaint but also "the facts and allegations contained in [his] additional submissions." *Manley v. N.Y.C. Police Dep't*, No. 05-CV-679 (FB) (LB), 2005 WL 2664220, at *1 (E.D.N.Y. Oct. 19, 2005). The allegations are "accept[ed] as true" on a motion to dismiss. *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).

## I.   Factual Background

Plaintiff alleges that he opened a Chase credit card account in 1997.  Am. Compl. ¶ 31 (Dkt. #33).  At that time, Chase offered cardholders optional insurance, LifePlus Credit Insurance ("LifePlus").  *Ibid.*  Plaintiff completed an application for the insurance and submitted it to Chase. *Id*. ¶ 33.

While paying his credit card bill in the mid-2000s, plaintiff attempted to apply his payments to specific charges.  *Id*. ¶¶ 35-37.  Chase refused, sending plaintiff a notice explaining its billing hierarchy.  *Id*. ¶ 37; *id*. Ex. B.  This hierarchy listed the order in which Chase applied payments to different categories of charges, including insurance products.  *Id*. ¶ 37; *id*. Ex. B.  Based on this generic hierarchy, plaintiff concluded that Chase had secretly changed the name of its LifePlus insurance to Credit Life Insurance ("Credit Life") and added it to plaintiff's account.  *Id*. ¶¶ 39-40.  Plaintiff again attempted to apply his payments to specific charges, telling Chase to refund the payments if it could not do so.  *Id*. ¶¶ 42-43.  Citing the Cardholder Agreement, Chase again refused, explaining that it could not apply the payments to specific charges as plaintiff had requested.  *Id*. ¶ 43.

Later, plaintiff alleged that Chase added a different insurance line, PRIVGRD, to his card without his authorization.  *Id*. ¶ 47.  To the amended complaint, plaintiff appended a card statement from 2006 that includes a charge from "TLG*PRIVGRD."  *Id*. Ex. E.  Plaintiff alleges that LifePlus, Credit Life, and PRIVGRD were all supposed to make the minimum payments on his credit card account for him if he defaulted.  *Id*. ¶¶ 37, 47, 52.

Finally, plaintiff alleges that Chase added his name to an account, *id.* ¶ 50, and that Chase's officers represented that he owed approximately $12,585 in 2011, *id*. ¶ 49.  According to the amended complaint, either computer glitches or hackers resulted in Chase being unable to match its customers with their accounts, and so Chase randomly assigned this new account to plaintiff.

*Id*. ¶¶ 52-53.  Apparently, Chase represented that he owed different amounts in 2011, 2013, and 2016.  *Id*. ¶¶ 79-81, 90.  Plaintiff also attaches a 2015 letter from Chase that appears to state that Chase had forgiven $9,779.28 of plaintiff's debt.  *Id*. Ex. A.

## II.    Procedural Background

In 2019, plaintiff decided to sue Chase after seeing an article about how Wells Fargo had charged fees to credit card customers for an insurance product they had not purchased.  *Id*. ¶ 15. Chase removed.  *See* Notice of Removal (Dkt. #1).  After removal, plaintiff filed the operative amended complaint.  *See* Am. Compl.  The amended complaint added six new defendants: Chase's CEO, Jamie Dimon; Chase's COO, Gordon Smith; Chase's law firm, McGlinchey Stafford PLLC ("McGlinchey"); two of Chase's attorneys, Dana M. Carrera and Dennis A. Amore; and John Doe. *Id*. ¶¶ 4-12.  Plaintiff explains that defendant "John Doe" is a placeholder for yet-to-be-"designate[d]" members "of the conspiracy."  *Id*. ¶ 14.  All identified defendants ("defendants") have moved to dismiss.

### A.    Jurisdictional Allegations

In the amended complaint, plaintiff states he is a citizen of New York.  *Id*. ¶ 1.  Alleging Ohio as its state of citizenship, Chase removed this case under 28 U.S.C. § 1332 and 28 U.S.C. § 1441.  *See* Notice of Removal ¶ 7, 9.  Plaintiff disputes Chase's citizenship.  *See* Pl.'s Mem. in Opp'n 5-12 (Dkt. #52).  In his amended complaint, plaintiff alleges that Mr. Dimon is a resident of New York, Am. Compl. ¶ 4, that Mr. Smith's, Ms. Carrera's, and Mr. Amore's residences are "unknown," *id*. ¶¶ 6, 9, 11, and that McGlinchey as a "resident of Louisiana" with a New York office, *id*. ¶ 8.  Even though McGlinchey is a professional limited liability company, the amended complaint does not identify its members or their citizenship.  *Ibid*.  Plaintiff makes no jurisdictional allegations regarding John Doe.  *Id*. ¶¶ 13-14.

### B.     The Claims

Against these defendants, the amended complaint alleges twenty-eight claims.  *Id*. ¶¶ 74-246.  The first seven claims and nineteenth claim are for breach of contract against Chase.  **Claim One** alleges breach of contract because Chase did not provide plaintiff with statements explaining why it rounded his default balance to $12,585 in some documents while listing it as $12,585.83 in others.  *Id*. ¶¶ 81-82.  **Claim Two** alleges breach of contract because Chase did not apply LifePlus insurance toward plaintiff's default balance.  *Id*. ¶ 87.  **Claim Three** alleges breach of contract because Chase informed plaintiff in September 2015 that he owed $9,779.28 without providing a monthly statement for an unspecified account.  *Id*. ¶¶ 91-92.  Like Claim Two, **Claim Four** alleges breach of contract because Chase did not use LifePlus insurance to pay plaintiff's minimum payments.  *Id*. ¶¶ 96-98.  **Claim Five** alleges breach of contract because Chase did not use Credit Life insurance to pay plaintiff's monthly minimums.  *Id*. ¶¶ 102-03.  **Claim Six** alleges breach of contract because Chase did not use Credit Life or LifePlus to pay a $9,779.28 debt.  *Id*. ¶ 109. **Claim Seven** alleges breach of contract because Chase did not respond to plaintiff when he demanded monthly statements showing the insurance payments.  *Id*. ¶ 115.  Finally, **Claim Nineteen** alleges breach of contract because Chase allegedly converted one of plaintiff's credit card accounts to a "BluePrint" account without notice.  *Id*. ¶¶ 188, 191.  Plaintiff infers that Chase altered the account type from the fact that Chase represented his balances differently in 2011, 2013, and 2016, and a BluePrint account allows "a user [to] create multiple different balances in a single account in any monthly billing cycle."  *Id*. ¶ 190; *see id*. ¶¶ 82-83, 188-90.

The eighth and ninth claims are for unjust enrichment and aiding and abetting unjust enrichment.  *Id*. ¶¶ 117-127.  **Claim Eight** alleges unjust enrichment because Chase followed its contractual payment hierarchy rather than applying plaintiff's payments to specified charges or returning his payments as he requested.  *Id*. ¶¶ 35-37, 42-42, 117-20.  **Claim Nine** alleges that

Chase's "[l]ower-[l]evel employees" aided and abetted the conduct identified in Claim Eight. *Id.* ¶ 127.

Claims Ten, Fourteen to Eighteen, Twenty-One, and Twenty-Four allege fraud, fraudulent concealment, conspiracy to commit fraud and fraudulent concealment, and aiding and abetting fraud. *Id.* ¶¶ 132-33, 154-86, 202, 203. **Claim Ten** alleges fraud by Chase for informing plaintiff that he owed $12,585.83 on an account that plaintiff denies was his. *Id.* ¶¶ 132-33. **Claim Fourteen** alleges that Chase and unspecified lower-level employees engaged in a conspiracy to commit fraud by lowering plaintiff's debt to induce him to pay the remainder. *Id.* ¶¶ 155-56. **Claim Fifteen** alleges conspiracy to commit fraudulent concealment by Chase and unspecified lower-level employees for neglecting to pay insurance benefits toward plaintiff's defaulted account. *Id.* ¶¶ 162-63. **Claim Sixteen** alleges fraudulent concealment by Chase for informing plaintiff in 2020 that his accounts did not carry insurance. *Id.* ¶ 169. **Claim Seventeen** alleges conspiracy to commit fraudulent concealment by Chase and its employees for telling plaintiff that he owned an account ending in the digits 0028. *Id.* ¶ 176. Like Claim Sixteen, **Claim Eighteen** alleges conspiracy to commit fraud by Chase for denying that any of plaintiff's accounts bore insurance. *Id.* ¶ 185. **Claim Twenty-One** alleges Chase's lower-level employees aided and abetted fraud by changing account balances to "give aid to Chase [in] mak[ing] lower or zero monthly minimum payments" on defaulted accounts. *Id.* ¶ 202. Styled a claim for "fraudulent intent," **Claim Twenty-Four** alleges that Chase committed fraud by faking debts in its customers' accounts so it could charge them off, write down its accounts, and thus evade taxes. *Id.* ¶ 223.

Claims Eleven, Twelve, Thirteen, and Twenty allege breach of fiduciary duty. *Id.* ¶¶ 138-39, 145, 149, 195-96. **Claim Eleven** alleges a breach of fiduciary duty by Chase, Mr. Dimon, and Mr. Smith because they did not prevent "software corruption/glitches" that resulted in Chase's

accounts being mixed up.  *Id*. ¶¶ 138-39.  **Claim Twelve** alleges a breach of fiduciary duty by the same three defendants because they "randomly pick[ed] out an account and add[ed] plaintiff's name to it" after someone hacked Chase's computer files.  *Id*. ¶¶ 142, 145.  **Claim Thirteen** alleges that Chase breached a fiduciary duty by putting unspecified incorrect balances on an unspecified credit card account.  *Id*. ¶¶ 149-51.  **Claim Twenty** alleges a breach of fiduciary duty by Chase, Mr. Dimon, and Mr. Smith because, as "a result of bad record keeping," they incorrectly determined that plaintiff lacked account insurance.  *Id*. ¶¶ 195-96.

Claims Twenty-Two, Twenty-Three, and Twenty-Five, all against Chase, allege embezzlement, conversion, and identity theft.  **Claim Twenty-Two** alleges that Chase embezzled insurance benefits.  *Id*. ¶ 212.   Though styled a claim for "[m]ismanagement and [m]isappropriation of funds," **Claim Twenty-Three** is best read as a claim for conversion.  *Id*. ¶¶ 215, 217-18.  This claim alleges that Chase "used all of plaintiff's credit card insurance benefits to inflate its [own] balance sheet," *id*. ¶ 215, therefore was "unable to make payments" on plaintiff's defaulted accounts, *id*. ¶ 217, and thus "convert[ed] [plaintiff's] property," *id*. ¶ 218.  **Claim Twenty-Five**[1] alleges that Chase committed identity theft by opening an account in plaintiff's name without his authorization.  *Id*. ¶ 226.

The final three claims involve Chase and its lawyers.  *Id*. ¶¶ 230-46.  **Claim Twenty-Six** alleges that Chase, McGlinchey, Ms. Carerra, and Mr. Amore conspired to commit fraudulent misrepresentation by removing this case to federal court.  *Id*. ¶ 233.  **Claim Twenty-Seven** alleges that Chase, McGlinchey, and the lawyers conspired to defraud plaintiff because they served him by mail.  *Id*. ¶¶ 236-40.  **Claim Twenty-Eight** alleges breach of contract against Chase, McGlinchey, and the individual lawyers because they allegedly violated the Cardholder

---

[1] Although the twenty-fifth claim listed, this claim is erroneously styled as the "thirty[-]fifth" claim in the amended complaint..

Agreement's choice-of-law provision by removing this case to federal court.  *Id.* ¶¶ 243-46.

### C.      The Pending Motions

Defendants now move to dismiss.  *See* Defs.' Mem. in Supp. (Dkt. #45-4).  In his response papers, plaintiff moves for remand.  *See* Pl.'s Mem. in Opp'n 2.[2]  He also moves the Court to reconsider the earlier denial of a motion for jurisdictional discovery.  *See* Ltr. Mot. for Reconsideration (Dkt. #60).[3]  In the motion, plaintiff now argues that Chase is a "business trust" and therefore a citizen of New York.  *See ibid*.  Finally, he moves to strike the copy of Chase's certified articles of incorporation that Chase has filed on the docket and again requests discovery.  *See* Mot. to Strike (Dkt. #68); Letter Mot. to Compel (Dkt. #69);[4] Letter Mot. for Clarification (Dkt. #73).[5]

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted."  To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Federal Rule of Civil Procedure 8).  The facial "plausibility standard is not akin to a 'probability requirement.'"  *Ibid*. (quoting *Twombly*, 550 U.S. at 556).  But it requires a plaintiff

---

[2] Plaintiff also initially moved to dismiss unidentified "third party defendants."  Notice (Dkt. #62).  However, when asked to specify the defendants to which the motion referred, he withdrew it.  Mar. 3, 2022 Minute Entry & Order.

[3] Plaintiff also filed a prior motion for reconsideration.  *See* Mot. for Reconsideration (Dkt. #59).  Though this motion, which forwards a new theory of Chase's citizenship, superseded the previous one, the arguments in the prior motion for reconsideration were substantially the same as those in plaintiff's opposition papers.

[4] Though the motion is styled as a "motion to compel," the Court construes this as a renewed motion for discovery, since discovery has not yet commenced.

[5] Though the motion is styled as a "motion for clarification," the letter expands and clarifies plaintiff's discovery requests.  Accordingly, the Court construes it as a further discovery motion.

to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Ibid*. But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid*.

Where, as here, a plaintiff alleges fraud or fraudulent concealment, those claims must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 578-79, 582 (2d Cir. 2005). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To do so, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted); *see Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013). While scienter "may be alleged generally," Fed. R. Civ. P. 9(b), the plaintiff must "allege facts that give rise to a strong inference of fraudulent intent," *Lerner*, *v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (citation omitted). Additionally, a plaintiff must allege "the time, place, speaker and sometimes even the content of the alleged misrepresentation." *Aetna Cas. & Sur. Co.*, 404 F.3d at 579.

Finally, when a plaintiff is proceeding *pro se*, the complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotations and citations omitted).

## DISCUSSION

Plaintiff's motion to remand is denied, as are his motions for reconsideration, discovery, and to strike.  The motion to dismiss is granted in full.

## I.      The Exercise of Diversity Jurisdiction is Appropriate

Since the case is completely diverse, diversity jurisdiction exists.  As a national bank, Chase is a citizen of Ohio.  And under the doctrine of fraudulent joinder, the named defendants do not destroy diversity.[6]

### A.      Since Chase is a citizen of Ohio, remand, discovery, and the motion to strike are denied.

Plaintiff argues that the case should be remanded because Chase is, like him, a citizen of New York.  Pl.'s Mem. in Opp'n 7-8.[7]  As the party that removed the action, Chase bears the burden of establishing diversity.  *See Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011).  It has met this burden.

Because Chase is a national banking association, it is a citizen of Ohio and thus diverse.  While a corporation is typically considered a citizen of both its state of incorporation and the

---

[6] Since plaintiff alleges only that the "John Doe" defendant is placeholder, Am. Compl. ¶¶ 13-14, the Court disregards it for the purposes of evaluating jurisdiction at this phase in the proceedings.  While it is possible that a John Doe defendant could eventually be identified as a citizen of New York, "the mere inclusion of John Doe defendants does not destroy complete diversity until it is later found that one or more of the unknown defendants is domiciled such that there is not complete diversity."  *Zaccaro v. Shah*, 746 F. Supp. 2d 508, 516 (S.D.N.Y. 2010) (quoting *Doe v. Ciolli*, 611 F. Supp. 2d 216, 220 (D. Conn. 2009)); *see, e.g.*, *Grice v. McMurdy*, No. 18-CV-6414 (MAT), 2020 WL 90770, at *1 n.1 (W.D.N.Y. Jan. 8, 2020); *Wells Fargo Bank, N.A. v. Ullah*, No. 13-CV-485 (JPO), 2014 WL 470883, at *6 n.3 (S.D.N.Y. Feb. 6, 2014); *Marcelo v. EMC Mortg. Corp.*, No. 10-CV-5964 (JS) (ETB), 2011 WL 1792671, at *2 n.3 (E.D.N.Y. May 6, 2011).

[7] Plaintiff also accuses Chase of "waiting until the last minute to remove the complaint."  Pl.'s Mem. in Opp'n 5.  Typically, service must occur within thirty days, *see* 28 U.S.C. § 1446(b), and Chase removed thirty-three days after plaintiff mailed the copy of the summons and complaint, *see* Notice of Removal, Ex. A (Dkt. #1).  However, Chase contends that service was not proper, so the thirty-day clock never began to run and removal was timely.  *See* Notice of Removal ¶ 2 (Dkt. #1).  Plaintiff does not challenge Chase's allegations concerning service.  Moreover, plaintiff did not claim that Chase's removal was untimely for this reason within 30 days of the filing of the notice of removal.  As a result, plaintiff's challenge to removal on this ground is time-barred.  *See Agyin v. Razmzan*, 986 F.3d 168, 181 n.15 (2d Cir. 2021) ("[R]emand based on a defect in removal procedure—such as the untimeliness of removal—must be effected within 30 days after the filing of the notice of removal." (quotations omitted)).

location of its principal place of business, *see Hertz Corp. v. Friend*, 559 U.S. 77, 88 (2010); 28

U.S.C. § 1332, a more specific statute governs national banking associations, *see Excelsior Funds,*

*Inc. v. JP Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312, 314 (S.D.N.Y. 2006); 28 U.S.C. § 1348.

Under this statute, a national bank is a citizen only of the state listed in its articles of association.

*OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016).  To establish its citizenship,

Chase has filed a certified copy of its revised articles of association, sworn by the acting

Comptroller of the Currency.  *See* Defs.' Letter Resp. to Mot. for Reconsideration ("Defs.' Letter

Resp.") Ex. A (Dkt. #66-1).  Chase's articles identify Ohio as the location of its main office and

therefore as its state of citizenship.  *See OneWest Bank, N.A.*, 827 F.3d at 218 ("[A] national bank

is 'located,' for diversity jurisdiction purposes, in the state designated in its articles of association

as the locus of its main office." (citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006)).

Other courts in this circuit have considered Chase's citizenship and reached the same conclusion.

*Excelsior Funds, Inc.*, 470 F. Supp. 2d at 313 (holding that Chase is not a citizen of New York for

diversity-jurisdiction purposes); *Pipala v. JP Morgan Chase Bank NA*, No. 16-CV-3723 (VB),

2016 WL 7378979, at *1 n.1 (S.D.N.Y. Dec. 20, 2016) (same); *Scully v. Chase Bank USA, NA*,

No. 16-CV-325 (NGG) (RML), 2016 WL 2977270, at *3-4 (E.D.N.Y. May 20, 2016) (same).

Plaintiff's submissions are not to the contrary.  First, plaintiff argues that Chase is a New

York citizen because its principal place of business is in New York.  Pl.'s Mem. in Opp'n 5-8.

However, since Chase shows that it is a national bank, its principal place of business is immaterial

to its citizenship.  *See OneWest Bank, N.A.*, 827 F.3d at 218.  To bolster his argument, plaintiff has

filed multiple screen captures from the website of the Secretary of State of Ohio.  *See* Pl.'s Mem.

in Opp'n 20; Mot. for Reconsideration Ex. B.  None contradict Chase's filings.  The first image

identifies Chase as a "foreign corporation" because its "[l]ocation" is the "United States of

10

America," not Ohio.  Pl.'s Mem. in Opp'n 20.  This appears to signify only that Chase is incorporated under the laws of the United States rather than the laws of Ohio, which is consistent with Chase's status as a national bank.  *See OneWest Bank, N.A.*, 827 F.3d at 219 (national banks are associated "under the laws of the United States" (quotations omitted)).  Another shows information about a Chase affiliate, not Chase itself.  Pl.'s Mem. in Opp'n 21-22 (concerning "JPMorgan Chase & Co," not "JPMorgan Chase Bank, N.A.").  Finally, the third screen capture show a business trust with no apparent affiliation to Chase.  *See* Mot. for Reconsideration Ex. B (describing "JP Morgan Chase Bank, National Association (2118141)," affiliated with "The Federal Reserve Bank of Fite & Co., Holdings"); Defs.' Letter Resp. 2 n.2 (supplying information about Fite and explaining that unlike this business, Chase's name does not contain "(2118141)").

Because Chase has filed its certified articles of incorporation and plaintiff offers neither evidence nor specific factual allegations contradicting them, removal remains valid.  Therefore, plaintiff's motion for remand is denied.

Moreover, since the Federal Rules of Civil Procedure "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678-79, plaintiff's motion for reconsideration as to jurisdictional discovery and renewed motions for discovery are also denied, *see Northfield Ins. Co. v. GM Star Constr., Inc.*, 532 F. Supp. 3d 73, 74 (E.D.N.Y. 2021).  Since plaintiff supplies neither specific factual allegations nor evidence contradicting Chase's submissions, plaintiff has not demonstrated an entitlement to discovery.

Finally, plaintiff has moved to strike Chase's articles of incorporation from the docket because he argues they contradict his filing showing that Chase is a "business trust."  *See* Mot. to Strike (relying on the "business trust" theory).  As explained, this filing appears to refer to an entirely different business and does not contradict Chase's articles of incorporation.  *See* Mot. for

Reconsideration Ex. B; Defs.' Letter Resp. 2 n.2.  Since plaintiff has offered no other reason to strike, the motion is denied.

**B.    The doctrine of fraudulent joinder permits the Court to discount the citizenship of the other defendants.**

The citizenship of the five named defendants does not trigger remand either.  Under the doctrine of fraudulent joinder, the court may retain jurisdiction when a plaintiff adds a nondiverse defendant if the defendants show the nondiverse defendant has "no real connection with the controversy."  *DNJ Logistic Grp., Inc. v. DHL Exp. (USA), Inc.*, 727 F. Supp. 2d 160, 164 (E.D.N.Y. 2010) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). This may be accomplished by demonstrating "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Ibid*. (quoting *Pampillonia*, 138 F.3d at 461).  In making this determination, "all uncertainties in applicable state law are resolved in favor of the plaintiff, and the complaint is subjected to less searching scrutiny than on a motion to dismiss for failure to state a claim." *Ibid*. (quoting *Campisi v. Swissport Cargo Servs., LP*, 09-CV-1507 (FB) (JMA), 2010 WL 375878, at *2 (E.D.N.Y. Jan. 26, 2010)) (brackets omitted).

Since "state case law . . . removes all reasonable possibility that the plaintiff would be permitted to litigate [his] claim[s]" against these five defendants, *Lopez v. Bell Sports, Inc.*, No. 14-CV-2530 (SJF) (SIL), 2015 WL 1396466, at *2 (E.D.N.Y. Mar. 25, 2015) (quotations omitted), their citizenship is not cause for remand.

**1.    Based on the pleadings, there is no possibility plaintiff can state a claim against Mr. Dimon or Mr. Smith.**

Three claims, Claims Eleven, Twelve, and Twenty involve Mr. Dimon and Mr. Smith. These are breach-of-fiduciary-duty claims brought against Mr. Dimon, Mr. Smith, and Chase for failing to prevent "software/corruption glitches" in Chase's accounts, Am. Compl. ¶ 137 (Claim

Eleven), for "randomly picking out an account and add[ing] plaintiff's name to it," *id*. ¶ 145 (Claim Twelve), and for "bad record keeping" resulting in Chase's determination that plaintiff had no insurance on his account, *id*. ¶ 195.  Defendants contend that Mr. Dimon and Mr. Smith were fraudulently joined because plaintiff cannot state a claim for breach of fiduciary duty against them. *See* Defs.' Mem. in Supp. 14-15 (Dkt. #45-4); Defs.' Reply 5-9 (Dkt. #55).

       To bring a claim for breach of fiduciary duty, a fiduciary relationship must first exist.  *See Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) ("To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." (quotations omitted)).  The general rule under New York law is that "the relationship between a borrower and a bank is contractual in nature and does not create a fiduciary relationship."  *Baumann v. Hanover Cmty. Bank*, 100 A.D.3d 814, 817 (N.Y. App. Div. 2012); *JPMorgan Chase Bank, N.A. v. Freyberg*, 171 F. Supp. 3d 178, 191 (S.D.N.Y. 2016) (explaining that New York courts are reluctant to disturb this rule)).  The essence of a fiduciary relationship is "de facto control and dominance," *Doe v. Roman Cath. Diocese of Rochester*, 12 N.Y.3d 764, 765 (N.Y. 2009) (quotations omitted), and courts only set aside the general rule when the relationship between the borrower and bank bears these characteristics, *see, e.g.*, *Mfts. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993) (no fiduciary relationship where a bank did not "exercise[] powers beyond those of a typical lender-creditor").

       The amended complaint contains no indication that Chase or its executives "exercise[] powers beyond those of a typical lender-creditor."  *Ibid*.  Plaintiff alleges that he held a Chase credit card and purchased account insurance from Chase.  Am. Compl. ¶¶ 31-33.  This describes a straightforward "contractual" relationship "between a borrower and a bank" and nothing more.

*Baumann*, 100 A.D.3d at 816.  Since such dealings do "not create a fiduciary relationship," *id*. at 817, "there is no possibility, based on the pleadings, that . . . plaintiff can state a cause of action [for breach of fiduciary duty] against [Mr. Dimon and Mr. Smith] in state court."  *DNJ Logistic Grp., Inc.*, 727 F. Supp. 2d at 164 (quoting *Pampillonia*, 138 F.3d at 461).  Thus, Mr. Dimon and Mr. Smith have "no real connection with the controversy," *ibid.*, and do not count for purposes of diversity jurisdiction.

> **2.  Defendants also demonstrate that, based on the pleadings, there is no possibility plaintiff can state a claim against Chase's law firm or its lawyers.**

The same is true for McGlinchey, Ms. Carrera, and Mr. Amore.  Claims Twenty-Six and Twenty-Seven allege that Chase, McGlinchey, and its lawyers committed fraud and conspired to commit fraud in removing this case to federal court.  Am. Compl. ¶¶ 233, 236-40.  Claim Twenty-Eight asserts that these defendants breached the Cardholder Agreement's choice-of-law provision by litigating in federal court.  *Id*. ¶¶ 243-46.  Defendants contest the legal sufficiency of these claims.  Defs.' Mem. in Supp. 18-19; Defs.' Reply 5-10; Defs.' Letter Resp. 3-4.

None of these claims have merit.  To state a claim for fraud under New York law, a plaintiff must allege: "(1) the defendant made a material misrepresentation; (2) with intent to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation; and (4) suffered damage as a result."  *Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004) (quotations omitted).  To plead conspiracy to commit fraud, a plaintiff must plead the elements of fraud, as well as "an agreement between conspirators" regarding the fraud and "an overt action in furtherance of the agreement."  *Fairstein v. Netflix, Inc.*, No. 20-CV-8042 (PKC), 2021 WL 3501527, at *23 (S.D.N.Y. Aug. 9, 2021) (quoting *Perez v. Lopez*, 97 A.D.3d 558, 560 (N.Y. App. Div. 2012)).  To substantiate his fraud claims, plaintiff alleges that Chase is

not diverse, that defendants served him by mail, and that Ms. Carrera's and Mr. Amore's notices of appearance contained typographical errors.[8]

None of these allegations identify material misrepresentations. As described previously, aside from conclusory assertions, plaintiff offers nothing to indicate that Chase has misrepresented its citizenship. *See* pages 9-11, *supra*. Nor does plaintiff allege any misrepresentations regarding service. Service is effective upon mailing. Fed. R. Civ. P. 5(b)(2)(C). Plaintiff alleges that Ms. Carrera certified service of the notice of removal on November 13, 2020, but that shipping the notice took three days. Am. Compl. ¶ 239.[9] Since service is effective upon mailing, *see* Fed. R. Civ. P. 5(b)(2)(C), the allegation that shipping took three days does not contradict Ms. Carrera's representations as to service. Nor are the alleged errors in Ms. Carrera's and Mr. Amore's notices of appearance material. *See* Pl.'s Mem. in Opp'n 6. Ms. Carrera's notice of appearance described her client as "Chase Bank, N.A., as successor by merger to Chase Bank USA, N.A.," while Mr. Amore's notice described Chase as "Chase Bank, N.A., as successor by merger to JPMorgan Chase Bank USA, N.A." *Compare* Notice of Appearance (Dkt. #4) *with* Notice of Appearance (Dkt. #6).

---

[8] In his response, plaintiff also argues that defendants' motion to dismiss should be denied because of a defect in service. He alleges that service was defective because the individual who served him, presumably a McGlinchey affiliate, mailed plaintiff the motion to dismiss on July 19, 2021, from Texas and then filed a certificate of service in New York on the next day. *See* Pl.'s Mem. in Opp'n 6. The Court construes this argument as a motion to strike.

This motion is denied. As discussed, *see* pages 14-15, *infra*, service may be performed by mail, Fed. R. Civ. P. 5(b)(2)(C), and proof of service need only be filed "within a reasonable time after service," Fed. R. Civ. P. 5(d)(1)(B)(i). Filing a certificate of service the day after performing service does not violate the Rule. Nor does the Rule require that the certificate of service must be sworn in the same state where service was performed.

Moreover, even if the certificate of service contained technical errors, such errors would not justify striking the motion. "The principal importance" of a certificate of service "is to provide the Court with clear proof that service has been accomplished." *Ezeh v. VA Med. Ctr.*, No. 13-CV-6563 (EAW), 2014 WL 4897905, at *9 (W.D.N.Y. Sept. 29, 2014) (quoting *Ives v. Guilford Mills, Inc.*, 3 F. Supp. 2d 191, 195 (N.D.N.Y. 1998)). Therefore, courts do not strike motions so long as service is effected, even when a certificate of service is entirely absent. *See, e.g.*, *Russell v. City of Milwaukee*, 338 F.3d 662, 666 (7th Cir. 2003) ("[T]he absence of a certificate does not require the invalidation of the paper where service is not contested or where the court finds that service was accomplished." (quoting 1 James Wm. Moore et al., *Moore's Federal Practice* § 5.20[1] at 5-34 (3d ed.)). Since "service [itself] is not contested," *Russell*, 338 F.3d at 666, there is no reason to strike defendants' filings.

[9] The amended complaint contains two paragraphs numbered "239." This is the second of the two.

Since both notices clearly identify the defendant as Chase, they contain no material misrepresentations.

Furthermore, to the extent that either the certificates of service or the notices of appearance contain any inaccuracies, plaintiff has not pleaded that he relied upon them in any way. "[T]he failure to plead reliance renders" a claim for fraud "patently without merit." *Tag Mech. Sys., Inc. v. V.I.P. Structures, Inc.*, 63 A.D.3d 1504, 1505 (N.Y. App. Div. 2009) (quotations omitted). Indeed, plaintiff has contested Chase and its lawyers at every turn. *See* Reply to Notice of Removal (Dkt. #9) (objecting to removal). Since plaintiff fails to allege basic elements of fraud, these two fraud and conspiracy-to-commit-fraud claims are without merit.

The same is true of plaintiff's breach-of-contract claim. To state a claim for breach of contract in either New York or in Delaware, a plaintiff must allege "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff." *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1279 n.28 (Del. 2016) (Delaware law); *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) ("To prevail on a breach-of-contract claim in New York, a plaintiff must prove: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach."). Plaintiff alleges that defendants breached the Cardholder Agreement's choice-of-law provision by litigating in New York instead of Delaware, and he attaches a copy of the provision to the amended complaint to prove it. Am. Compl. ¶¶ 242-46; *id*. Ex. J.

Plaintiff appears to have misunderstood this provision. Titled "Governing Law," this clause states that "the terms and enforcement of this agreement and your account shall be governed and interpreted in accordance with federal law, and to the extent state law applies, the law of Delaware." *Id*. Ex. J. It requires the application of Delaware law, but it contains no restriction as

to the geographic location where either party may sue.  *Ibid*. (explaining that the "law of Delaware" applies, not that litigation shall take place in Delaware).  Since plaintiff identifies no contractual obligation that defendants breached, his breach-of-contract claim is without substance.

As with Mr. Dimon and Mr. Smith, the Court likewise finds that "there is no possibility, based on the pleadings, that . . . plaintiff can state a cause of action" "in state court" for fraud, conspiracy to commit fraud, or breach of contract against McGlinchey, Ms. Carrera, or Mr. Amore. *DNJ Logistic Grp., Inc.*, 727 F. Supp. 2d at 164 (quoting *Pampillonia*, 138 F.3d at 461).  Their presence does not destroy diversity, and the Court may retain jurisdiction.

## II.     The Amended Complaint Is Dismissed as Insufficiently Pleaded

Having resolved the jurisdictional disputes, the Court turns to defendants' motion to dismiss.  This motion is granted in full.  Claims Eleven, Twelve, Twenty, Twenty-Six, Twenty-Seven, and Twenty-Eight, *see* pages 11-17, *supra*, are deficient for the reasons stated above and are dismissed.  So too are remaining claims brought against Chase.

### A.     Plaintiff does not successfully state a claim for breach of contract.

Since the Cardholder Agreement provides for the application of Delaware law, the Court uses Delaware law in resolving plaintiff's remaining breach-of contract claims.  *See* Am. Compl. Ex. J.  However, the result is the same under either Delaware or New York law, as a claim for breach of contract in either state requires the existence of a contractual obligation that the defendant failed to perform, and these basic elements, coupled with Federal Rule of Civil Procedure 8(a)'s pleading standards, resolve these claims.  *Compare Connelly*, 135 A.3d at 1280 n.28 (Under Delaware law, the elements of a breach-of-contract claim are (1) "the existence of the contract, whether express or implied," (2) "the breach of an obligation imposed by that contract," and (3) "the resultant damage to the plaintiff.") *with Moreno-Godoy*, 7 F.4th at 85 (2d Cir. 2021)

("To prevail on a breach-of-contract claim in New York, a plaintiff must prove: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach.").

Eight breach-of-contract claims remain.   Claims One, Three, and Seven allege, in substance, that Chase did not provide various forms of documentation.  *See* Am. Compl. ¶¶ 78-83 (Claim One: Chase represented that plaintiff owed either $12,585.83 or $12,585 in 2011, $12,585 in 2013, and $12,585.83 in 2016 but did not explain why it rounded the sum in some instances and not others); *id*. ¶¶ 90-93 (Claim Three: Chase sent plaintiff a notice in 2015 indicating that he owed $9,779.28 without including in that mailing copies of monthly statements explaining the sum); *id*. ¶¶ 112-16 (Claim Seven: plaintiff, at some unspecified time, demanded monthly statements pertaining to the insurance lines he believed were on his account, and Chase failed to comply). Claims Two, Four, Five, and Six allege that Chase failed to make insurance payments toward his account.  *Id*. ¶ 86 (Claim Two: Chase "fail[ed] to apply the LifePlus insurance benefits towards the account"); *id*. ¶ 98 (Claim Four: Chase "h[eld] back payment of the LifePlus credit insurance benefit funds" on the debt stated as $12,585.83); *id*. ¶ 103 (Claim Five: Chase "fail[ed] to apply the Credit Life insurance benefit funds toward the monthly minimum payments" on the debt stated as $12,585.83); *id*. ¶ 108 (Claim Six: Chase "fail[ed] to apply the Credit Life or LifePlus insurance benefit funds" toward the stated debt of $9,779.28).  Claim Nineteen alleges that Chase converted plaintiff's account to a BluePrint account without his permission, a fact that plaintiff appears to have inferred because his debt was stated variously as $12,585.83, $12,585, and $9,779.28 at different times.  *Id*. ¶¶ 188-89, 191.

Claims One, Three, and Seven fail because plaintiff does not allege specific details showing that Chase had a contractual obligation to produce these documents.  In federal court, Rule 8 of

the Federal Rules of Civil Procedure governs the standards for pleading.  *See* Fed. R. Civ. P. 8; *Iqbal*, 556 U.S. at 677.  Under this standard, to survive a motion to dismiss a breach-of-contract claim, a plaintiff must "identify [the] provision of the agreement that Chase's conduct allegedly violated."  *Weinstock v. Chase Card Servs*., No. 07-CV-3087 (ENV), 2009 WL 10706507, at *6 (E.D.N.Y. Oct. 5, 2009) (applying Delaware law); *accord Aleph Towers, LLC v. Ambit Tex., LLC*, No. 12-CV-3488, 2013 WL 4517278, at *6 (E.D.N.Y. Aug. 23, 2013) (A breach of contract claim will be dismissed where a plaintiff fails to allege "the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." (internal quotations omitted) (applying New York law)).

Plaintiff does not do so.  While he apparently possessed a Chase credit card, he alleges no facts about the Cardholder Agreement that indicate what documentation Chase was obligated to provide, or when.  *See* Am. Compl. ¶¶ 78-83 (Claim One); *id*. ¶¶ 90-93 (Claim Three); *id*. ¶¶ 112-16 (Claim Seven).  Moreover, the amended complaint does not identify what types of notices Chase sent to plaintiff in 2011, 2013, or 2016, *see id*. ¶¶ 78-83 (Claim One), or whether he still had a contract with Chase when he demanded the notices, *id*. ¶¶ 112-16 (Claim Seven).  Since plaintiff does not "even summarize[] the essential terms" relevant to Chase's alleged failure to provide documents "with [any] specificity," *Cellucci v. O'Leary*, No. 19-CV-2752 (VEC), 2020 WL 977986, at *9 (S.D.N.Y. Feb. 28, 2020) (applying both New York and Delaware law), plaintiff fails to state a claim on his first, third, and seventh causes of action.

The same shortcomings bedevil plaintiff's second, fourth, fifth, and sixth claims, all of which allege in some fashion that Chase never made LifePlus or Credit Life payments on plaintiff's account.  *Id*. ¶ 86 (Claim Two); *id*. ¶ 98 (Claim Four); *id*. ¶¶ 101-03 (Claim Five); *id*. ¶ 108 (Claim Six).  The basic issue is that the amended complaint contains no specific allegations indicating that

Chase contracted to give plaintiff LifePlus or Credit Life insurance at all.  Under either Delaware or New York law, a plaintiff must allege "first, the existence of [a] contract." *VLIW Tech., LLC v. Hewlett-Packard Co*., 840 A.2d 606, 612 (Del. 2003) (Delaware law); *see Moreno-Godoy*, 7 F.4th at 85 (2d Cir. 2021) (under New York law, a plaintiff must allege "the existence of a contract"). When a complaint "fail[s] to allege facts sufficient to show that an enforceable contract exist[s]," the claim will be dismissed. *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A*., No. 03-CV-1537 (MBM), 2003 WL 23018888, at *4 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004); *accord Cellucci*, 2020 WL 977986, at *9 (applying New York and Delaware law).

So it is here.  While plaintiff alleges that he applied for LifePlus insurance, he does not allege whether he met the criteria for the program.  *See* Am. Compl.  ¶¶ 32-33 (alleging only that he completed an application by submitted his birth date and a request to transfer $200 to a new card).  These criteria are listed in the LifePlus advertisement plaintiff attached to his amended complaint.  *See id*. Ex. A (criteria including, *inter alia*, fulltime employment and certain age limits).  Moreover, he does not allege that Chase ever indicated that it accepted his application. *See* Am. Compl.  And the only specific allegation he makes indicating that he held Credit Life insurance was that Chase lists Credit Life insurance in the generic payment hierarchy that appears to apply to all customers.  *See id*. ¶ 37; *id*. Ex. B.  Tellingly, plaintiff does not allege that he ever received any documentation from Chase indicating that he had been enrolled in either program, that he ever paid any premiums toward LifePlus insurance, *id*. ¶ 38 (alleging plaintiff believed Chase was paying his insurance policy), or that any charges for Credit Life ever appeared on his bill, *id*. ¶ 39 (alleging that Chase charged customers for Credit Life using a "hidden built-in payment premium").

Furthermore, even if plaintiff were enrolled in the program, the amended complaint does not identify the circumstances obligating Chase to pay benefits or whether plaintiff qualified to receive benefits. The advertisement concerning LifePlus indicates that the insurance pays only under certain circumstances, such as disability. *Id.* Ex. A. Plaintiff does not allege what those circumstances are, or whether he qualified for them. And the amended complaint lacks any allegations whatsoever indicating when a beneficiary is entitled to Credit Life payments.

Finally, Claim Nineteen fails because, assuming that Chase did convert an account held by plaintiff into a BluePrint account, *see id.* ¶¶ 188-89, 191, plaintiff does not identify any contractual provision that this action breached. *See Weinstock*, 2009 WL 10706507, at *6 (dismissing claim where plaintiff failed to "identify [the] provision of the agreement that Chase's conduct allegedly violated" because plaintiff "is not immune from basic pleading rules") (applying Delaware law); *accord Harbor Distrib. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 215 (E.D.N.Y. 2016) ("The [plaintiff] must allege the specific provisions of the contract upon which the breach of contract is based.") (applying New York law). It is not clear what account Chase converted, and if it was plaintiff's credit card account, plaintiff provides no details about the Cardholder Agreement showing that it prohibited such a conversion.

Since "[c]onclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim," *Harbor Distrib. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 215 (E.D.N.Y. 2016) (quoting *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-CV-3956 (RPP), 2014 WL 837050, at *2 (S.D.N.Y. Mar. 3, 2014)) (collecting cases), plaintiff's first, second, third, fourth, fifth, sixth, seventh, and nineteenth claims are dismissed.

**B.      Plaintiff does not state claims for unjust enrichment.**

Claims Eight and Nine, for unjust enrichment and aiding and abetting unjust enrichment, also fail.  These claims allege that Chase and its lower-level employees failed to apply plaintiff's payments to specific card charges as he requested.  Am. Compl. ¶¶ 35, 117-28.

To state a claim for unjust enrichment under New York law, a plaintiff must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the defendant] to retain what is sought to be recovered."  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (N.Y. 2011) (quotations omitted).  Stating a claim for aiding and abetting unjust enrichment—or for aiding and abetting any tort in New York—requires allegations of "(1) the existence of an underlying tort; (2) the defendant's knowledge of the underlying tort; and (3) that the defendant provided substantial assistance to advance the underlying tort's commission."  *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012) (brackets and quotations omitted).

Plaintiff may not recover on these claims because he admits that he owed Chase the payments, and the Cardholder Agreement governed how his payments were applied.  "New York law does not permit recovery in quantum meruit . . . if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *see Stanley v. Direct Energy Servs.*, LLC, 466 F. Supp. 3d 415, 431 (S.D.N.Y. 2020) (a party may plead unjust enrichment in the face of a binding contract only when attacking the validity of the contract itself) (collecting cases).  Plaintiff admits that he owed money on his credit card and made payments to Chase. Am. Compl. ¶ 35.  Contrary to his request to apply the money to charges with higher APRs, *ibid.*, Chase applied plaintiff's voluntary payments per the contractual payment hierarchy, *see id*. Ex. B (including Chase's payment hierarchy and a letter from Chase explaining that the Cardholder

22

Agreement advises of the payment hierarchy and that use of the card constituted acceptance of its terms); *id*. ¶¶ 243-46 (Claim Twenty-Eight: insisting on the applicability of the Cardholder Agreement to this action).  Since the facts alleged in the amended complaint and attached documents indicate that the Cardholder Agreement governed the order in which payments were to be applied, plaintiff's unjust enrichment claims are precluded.

Moreover, plaintiff could not unilaterally alter the terms of the Cardholder Agreement by adding conditions to his payments without Chase's consent.  *See* Am. Compl. ¶ 35, 42 (sending Chase payments but directing Chase to return them if it did not consent to applying them to the specific charges he indicated).  Whether under Delaware or New York law, "[a]ny amendment to a contract, whether written or oral, relies on the presence of mutual assent and consideration." *Cont'l Ins. Co. v. Rutledge & Co*., 750 A.2d 1219, 1232 (Del. Ch. 2000); *accord Lawrence M. Kamhi, M.D., P.C. v. E. Coast Pain Mgmt., P.C*., 177 A.D.3d 726, 726 (N.Y. App. Div. 2019) (describing as "[f]undamental" the principle that one party cannot alter the terms of contract without "mutual assent").  Since the amended complaint does not allege that Chase consented to plaintiff's conditions, Chase was not bound to follow them.

No matter how these claims are construed, they too must be dismissed.

### C.    Nor does plaintiff successfully allege fraud.

Five claims allege fraud, conspiracy to commit fraud, and aiding and abetting of fraud. Am. Compl. ¶¶ 132-33 (Claim Ten: alleging fraud because Chase told plaintiff he owed $12,585.83 on an account that plaintiff denies was his); *id*. ¶¶ 155-57 (Claim Fourteen: alleging conspiracy to commit fraud by Chase and unspecified lower-level employees because they allegedly lowered plaintiff's debt to induce him to pay the remainder); *id*. ¶ 185 (Claim Eighteen: alleging conspiracy to commit fraud by Chase for denying that any of plaintiff's accounts bore

insurance); *id.* ¶ 202 (Claim Twenty-One: alleging aiding and abetting fraud by Chase's lower-level employees for changing account balances to "give aid to Chase [in] mak[ing] lower or zero monthly minimum payments" on defaulted accounts); *id.* ¶ 223 (Claim Twenty-Four: alleging fraud by Chase for faking debts in its customers' accounts so it could charge them off, write down its accounts, and thus evade taxes).

To state a claim for fraud in New York, a plaintiff must allege "(1) the defendant made a material misrepresentation; (2) with intent to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation; and (4) suffered damage as a result." *Eternity Global Master Fund, Ltd.*, 375 F.3d at 186-87 (quotations omitted). To plead conspiracy to commit fraud, a plaintiff must plead the elements of fraud, as well as "an agreement between conspirators" regarding the fraud and "an overt action in furtherance of the agreement." *Fairstein v. Netflix, Inc.*, No. 20-CV-8042 (PKC), 2021 WL 3501527, at *23 (S.D.N.Y. Aug. 9, 2021) (quoting *Perez v. Lopez*, 97 A.D.3d 558, 560 (N.Y. App. Div. 2012)). Aiding and abetting fraud requires alleging the existence of fraud, "the defendant's knowledge of the" fraud, and that "the defendant provided substantial assistance to advance the [fraud's] commission." *Bigio*, 675 F.3d at 172 (brackets and quotations omitted).

Claims Ten, Fourteen, and Eighteen fail because plaintiff does not adequately plead reliance. To state a claim for fraud in New York, a plaintiff must allege that he "relied upon a misrepresentation by a defendant to his . . . detriment." *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (N.Y. 2016). These three claims lack such allegations. The tenth claim alleges that Chase informed plaintiff that he owed money on an account he insists was not his. Am. Compl. ¶¶ 132-33. The fourteenth claim alleges that Chase lowered plaintiff's debt to induce him to make payments. *Id.* ¶¶ 155-56. Nowhere, though, does plaintiff allege that he

24

"relied upon [these] misrepresentation[s]," either by making payments or acting or failing to act in any way. *Pasternack*, 27 N.Y.3d at 829. Similarly, the eighteenth claim alleges that Chase stated in June 2020 that plaintiff never had any insurance on his accounts. Am. Compl. ¶ 181. However, plaintiff does not allege that he ever relied on Chase's 2020 statement. Thus, Claims Ten, Fourteen, and Eighteen must be dismissed.

The twenty-first and twenty-fourth claims fail because they do not allege fraud with sufficient particularity. Claim Twenty-One alleges that Chase and its employees changed account balances frequently in order to avoid making insurance payments. *Id*. ¶ 202. Claim Twenty-Four alleges that Chase faked debts in its customers' accounts so it could charge them off and avoid taxes. *Id*. ¶ 223. Rule 9(b) requires "stat[ing] with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how" of the alleged misrepresentation. *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (quotations omitted); *see Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). Those details are missing from these claims. Plaintiff does not identify which accounts these claims describe or when Chase engaged in this alleged behavior. Am. Compl. ¶¶ 202, 223. Moreover, the allegations that Chase engaged in a massive tax-evasion scheme contain no specific facts to make them plausible. *Id*. ¶¶ 222-23. Nor do the allegations about the alleged insurance underpayment scheme. *Id*. ¶¶ 200-02. Since these two claims do not "specify the statements that the plaintiff contends were fraudulent," "identify the speaker[s]" of these statements, "state where and when the statements were made," or allege specific facts substantiating the tax-evasion and insurance underpayment schemes, they too must be dismissed along with the other fraud claims. *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993)).

###### D.     Nor does plaintiff successfully allege fraudulent concealment.

Plaintiff's fifteenth, sixteenth, and seventeenth claims for fraudulent concealment and conspiracy to commit fraudulent concealment are also dismissed.

These claims allege that Chase and lower-level employees changed account balances to avoid paying Credit Life benefits, Am. Compl. ¶ 163 (Claim Fifteen), that Chase told plaintiff in 2020 that defendant never had insurance, *id*. ¶ 169 (Claim Sixteen), and represented that plaintiff owed $12,585.83, $12,585, and $9,779.28 at various times "without saying anything" about the insurance plaintiff alleges was on his account, *id*. ¶ 176 (Claim Seventeen).  To establish fraudulent concealment, a plaintiff must allege "(1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 348-49 (S.D.N.Y. 2019) (quotations omitted) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc*., 404 F.3d 566, 582 (2d Cir. 2005)).  Pleading conspiracy to commit fraudulent concealment requires the two additional elements of "an agreement between conspirators" to commit fraudulent concealment and "an overt act in furtherance of the agreement." *Fairstein*, 2021 WL 3501527, at \*23 (quoting *Perez*, 97 A.D.3d at 560).

The fraudulent-concealment claims fail for the same reasons the fraud-based claims failed. Like fraud, fraudulent concealment must be pleaded with "particularity," *Zirvi v. Flatley*, 838 F. App'x 582, 585 (2d Cir. 2020) (citing *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983)), and like plaintiff's twenty-first and twenty-fourth claims, the fifteenth claim does not "specify" which balances Chase allegedly manipulated, "identify" who was responsible for these alleged omissions, or "state where and when" the alleged omissions were made, *DiMuro*, LLC, 572 F. App'x at 30 (quoting *Mills*, 12 F.3d at 1175) (applying Rule 9(b)'s pleading standard).  Similarly, fraudulent

concealment requires allegations that the plaintiff "actually relied" on the material omission, *Bank of Am., Nat. Ass'n v. Commack Props., LLC*, No. 09-CV-5296 (DRH), 2011 WL 5401763, at *4 (E.D.N.Y. Nov. 4, 2011) ("In order to make a claim for fraudulent concealment a plaintiff must show that he 'actually relied on the disclosure or lack thereof.'" (quoting *Banque Arabe et Internationale D'Investissment v. Md. Nat'l Bank*, 57 F.3d 146, 156 (2d Cir. 1995)), and the sixteenth and seventeenth claims contain no allegations that plaintiff relied on Chase's 2020 statement or any of its representations in 2011, 2013, 2015, or 2016, Am. Compl. ¶¶ 165-77.

For these reasons, Claims Fifteen, Sixteen, and Seventeen are dismissed.

### E.    Plaintiff's fiduciary duty claims also fail.

Three breach-of-fiduciary-duty claims have already been dismissed.  *See* pages 13-14, *supra* (discussing Claims Eleven, Twelve, and Twenty).  Claim Thirteen, the last claim for breach-of-fiduciary duty, fails for the same reason, because plaintiff fails to allege the existence of a fiduciary duty.  *See ibid*.  While plaintiff alleges that Chase breached a fiduciary duty by placing incorrect balances on one of his accounts, Am. Compl. ¶ 149, plaintiff has failed to allege that a relationship existed between him and Chase other than that of "a borrower and a bank," *Baumann*, 100 A.D.3d at 817; *see* pages 13-14, *supra*.  Since a borrower-banker relationship "is contractual in nature and does not create a fiduciary relationship," it does give rise to the fiduciary duty required to sustain Claim Thirteen.  *Baumann*, 100 A.D.3d at 817.  Accordingly, plaintiff's last breach-of-fiduciary-duty claim is dismissed.

### F.    Plaintiff's embezzlement, conversion, and identity theft claims fail too.

Plaintiff's twenty-second, twenty-third, and twenty-fifth claims for embezzlement, conversion, and identity theft are also dismissed.

## 1.    Embezzlement

Claims Twenty-Two is dismissed for lack of a cause of action.  Moreover, even if New York still recognized a civil cause of action for embezzlement, plaintiff's claim is still insufficiently pleaded.

Under New York law, "criminal offenses . . . [that] are specifically defined in the Penal Law[] may not be pleaded as separate causes of action in a civil action."  *Montalvo v. J.P. Morgan Chase & Co*., 25 Misc. 3d 1244(A), 906 N.Y.S.2d 781 (N.Y. Sup. 2009) (citing *Crandall v. Bernard, Overton & Russell*, 133 A.D.2d 878, 879 (N.Y. App. Div. 1987), *appeal dismissed*, 70 N.Y.2d 940 (N.Y. 1988)); *Cohain v. Klimley*, No. 08-CV-5047 PGG, 2011 WL 3896095, at *4 (S.D.N.Y. Aug. 31, 2011), *aff'd sub nom. Sissel v. Rehwaldt*, 519 F. App'x 13 (2d Cir. 2013). Since New York criminalizes embezzlement, *see* N.Y. Penal Law § 155.05(2)(a), without supplying a parallel civil cause of action, a plaintiff may not bring an embezzlement claim in a civil suit.  *See Rachunow v. Jamieson*, No. 20-CV-5627 (PKC), 2021 WL 1894206, at *2 (S.D.N.Y. May 11, 2021) ("There is no civil cause of action under New York law for embezzlement.") (collecting cases).

Moreover, as defendants argue, even if a civil cause of action for embezzlement still exists, plaintiff has not adequately alleged it.  *See* Defs.' Mem. in Supp. 15-16; Pl.'s Mem. in Opp'n (failing to respond to this point).  At common law in New York, embezzlement is "a fraudulent appropriation of another's property by a person to whom it has been intrusted, or into whose hands it has lawfully come."  *Spiegel v. Levine*, 161 A.D. 764, 768 (N.Y. App. Div. 1914) (Barrett, J., concurring); *accord* 35A N.Y. Jur. 2d *Criminal Law: Principles and Offenses* § 911 (the "essence" of the crime of larceny by embezzlement, which codifies common-law embezzlement, is the conversion of property that "has been entrusted to the embezzler to hold on behalf of the owner").  Plaintiff does not allege that he "entrusted" Chase with money to "hold on [his] behalf."  35A N.Y.

28

Jur. 2d *Criminal Law: Principles and Offenses* § 911.  Rather, he alleges that Chase was contractually bound to make Credit Life insurance payments to him in the event he could not pay his monthly minimums, and that Chase failed to make those payments because of internal embezzlement. *Id*. ¶ 205 ("Chase ran[ ]out of . . . funds and could not apply the benefits.").  This claim sounds in contract, not in tort.  *Clark-Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 389 (N.Y. 1987) ("[A] simple breach of contract is not . . . considered a tort.").  Since plaintiff alleges only a contractual duty, not one giving rise to embezzlement, *Spiegel*, 161 A.D. at 768, this claim fails even with a cause of action.

Therefore, the embezzlement claim is dismissed.

## 2. Conversion

Claim Twenty-Three, for "[m]ismanagement and [m]isappropriation of funds," is best read as a conversion claim.  *See* Am. Compl. ¶¶ 215, 217-18 (alleging that Chase "convert[ed] [plaintiff's] property," *id*. ¶ 218, by "us[ing] all of plaintiff's credit card insurance benefits to inflate its [own] balance sheet," *id*. ¶ 215, rather than "mak[ing] payments" on plaintiff's defaulted accounts, *id*. 217); Defs.' Mem. in Supp. 16-17 (so construing); *see* Pl.'s Mem. in Opp'n (offering no response to defendants' characterization of this claim).  Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co*., 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth*., 87 N.Y.2d 36, 44 (N.Y. 1995)) (brackets omitted).  To state a claim for conversion under New York law, a plaintiff must plead (1) "a possessory right or interest in the property" and (2) "defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 485 (E.D.N.Y. 2016) (quotations omitted).

"An action for conversion of money is insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession." *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, No. 17-CV-1724 (SIL), 2020 WL 10508196, at *11 (E.D.N.Y. June 28, 2020) (quotations and brackets omitted). Therefore, the money must be "specifically identifiable and segregated," and there must exist "an obligation to return or otherwise treat in a particular manner the specific fund in question." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430-31 (S.D.N.Y. 2021) (quoting *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 117 (N.Y. App. Div. 1990)); *accord Shak v. Adelphi Univ*., 549 F. Supp. 3d 267, 275 (E.D.N.Y. 2021).

Plaintiff's conversion claim fails because the amended complaint does not allege that the funds plaintiff claims Chase owed him as insurance benefits were "specifically identifiable and segregated." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d at 430-31. Instead, he alleges that Chase mismanaged pooled insurance funds such that it was "unable to make [insurance] payments" generally. *Id*. ¶ 217. Nor does plaintiff allege that he was "entitled to immediate possession" of the insurance benefits, *GWG MCA Cap., Inc.*, 2020 WL 10508196, at *11, since the amended complaint suggests that these insurance benefits were to be paid only under certain circumstances. *Id*. ¶ 47; *id*. Ex. A. Since plaintiff has not alleged either that he was the "owner and entitled to immediate possession" of the allegedly converted benefits, *GWG MCA Cap., Inc.*, 2020 WL 10508196, at *11, or that these funds were "specifically identifiable and segregated," *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d at 430-31, his conversion claim fails.

### 3.   Identity Theft

Plaintiff's twenty-fifth claim alleges that Chase committed identity theft by "open[ing] an account with $9,779.28 in plaintiff's name . . . without [his] authorization." *Id*. ¶ 226. A letter attached to the amended complaint indicates that Chase *canceled* $9,779.28 of plaintiff's debt, not

that it assigned plaintiff new debt.  Am. Compl. Ex. A (describing how Chase has "issued an IRS-Form 1099-C . . . in the amount of $9,779.28 . . . . for the discharged debt").  Nevertheless, even assuming that Chase did open an account in plaintiff's name, he has not stated a claim under New York's identity-theft statute.

New York law does provide a cause of action for "theft of identity."  *See* N.Y. Gen. Bus. Law § 380-s; Defs.' Mem. in Supp. 17-18 (noting that plaintiff fails to a cause of action for his identity-theft claim); Pl.'s Mem. in Opp'n (failing to respond to this point).  However, this section, part of New York's Fair Credit Reporting Act, General Business Law § 380-a *et seq*., "authorizes a civil action *only* if the identity theft 'resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided.'" *Galper v. JP Morgan Chase Bank, N.A.,* 802 F.3d 437, 441 (2d Cir. 2015) (quoting N.Y. Gen. Bus. Law § 380-l) (emphasis added).  "[T]o recover under GBL § 380-s," a plaintiff must "allege that [the] [d]efendants' actions implicate credit reporting."  *Ibid*. (citing N.Y. Gen. Bus. Law § 380-l, which limits Section 380-l liability to acts "result[ing] in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted"); *see Prignoli v. Bruczynski*, No. 20-CV-907 (MKB), 2021 WL 4443895, at *9 (E.D.N.Y. Sept. 28, 2021); *Leser v. Karenkooper.com*, 856 N.Y.S.2d 498, 498 (N.Y. Sup. Ct. 2008) (dismissing Section 380-s claim lacking credit reporting where defendant allegedly used plaintiff's name, email address, logo, trade name, and photo); *Guardsman Elevator Co. v. Apartment Inv. & Mgmt. Co*., No. 116447/06, 2010 WL 3393269 (N.Y. Sup. Ct. Aug. 20, 2010) (dismissing GBL § 380-s claim because "[t]he basis for [the plaintiff's] claim herein does not involve credit reporting in any way"); *Dardashtian v. Gitman*, No. 17-CV-4327 (LLS), 2017 WL 6398718, at *8 (S.D.N.Y. Nov. 28, 2017) (dismissing GBL § 380-s claim because alleged conduct failed to "implicate[d] credit

reporting").  Since "[p]laintiff has failed to allege that [Chase's] actions implicate credit reporting, as is required to recover under GBL § 380-s," the identity-theft claim must be dismissed.  *Prignoli*, 2021 WL 4443895, at *9.

**CONCLUSION**

Remand, discovery, reconsideration as to jurisdictional discovery, and the motion to strike are denied, and the amended complaint is dismissed in full.[10]  While a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotations omitted), plaintiff has already had an opportunity to amend, *see* Jan. 28, 2021 Order (Dkt. #23) (granting an opportunity to amend "in line with established Second Circuit precedent").  Moreover, having considered all of plaintiff's filings in this case, there is no "indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result."  *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011).  Accordingly, the amended complaint is dismissed with prejudice.  The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:      March 31, 2022
            Brooklyn, New York

---

[10] Plaintiff has also filed a "motions to strike" a typographical error in his own briefing papers. *See* Mot. to Strike (Dkt. #61).  Since the underlying request for discovery has been denied, this motion is terminated as moot.